UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RAHEEM MORRIS,                                    :

               Petitioner,                      :         06 Civ. 2476 (LTS) (AJP)

          -against-                            :         **REPORT AND RECOMMENDATION**

SEARS,                                            :

               Respondent.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Laura Taylor Swain, United States District Judge:**


        Pro se petitioner Raheem Morris seeks a writ of habeas corpus from his November 6, 2002 conviction, after a jury trial in Supreme Court, Bronx County, of third degree criminal sale and third degree criminal possession of a controlled substance, and sentence of six to twelve years imprisonment.  (Dkt. No. 1: Pet. ¶¶ 1-5.)  See People v. Morris, 15 A.D.3d 241, 241, 788 N.Y.S.2d 853, 853 (1st Dep't), appeal denied, 4 N.Y.3d 833, 796 N.Y.S.2d 588 (2005).  Morris' habeas corpus petition raises the single claim that "by interrupting and conducting substantial segments of defense counsel's cross examination of the arresting officer and undercover in an effort to make their stories coherent and credible the court denied [Morris] his due process right to fair trial."  (Pet. ¶ 13.)

        For the reasons set forth below, because the First Department denied Morris' claim on the adequate and independent state ground that the claim was not preserved, Morris' habeas petition should be DENIED.

## FACTS

### The Trial[1]

        Morris' conviction arose from a July 5, 2001 sale of cocaine to an undercover police officer.  Morris was tried before Justice Joseph Fisch and a jury.

### The Prosecution Case at Trial

        On July 5, 2001, Detective Steven Smith was the arresting officer for a buy and bust operation[2] in the Bronx.  (Dkt. No. 4: Park Aff. Ex. 1: Morris 1st Dep't Br. at 3; see Park Aff. Ex. 2: Gov't 1st Dep't Br. at 3-5.)  Undercover Detective Monique Parker entered apartment 1E at 2295 Grand Concourse and asked Jose Muniz for two dime bags of cocaine while handing him twenty dollars of pre-recorded buy money.[3]  (Morris 1st Dep't Br. at 3-4; Gov't 1st Dep't Br. at 4.)  Muniz walked to the back of the apartment and Det. Parker saw petitioner Raheem Morris lying on a couch, ten to fifteen feet away from her.  (Morris 1st Dep't Br. at 4-5; Gov't 1st Dep't Br. at 4.)  Muniz returned and handed Det. Parker two bags of crack cocaine.  (Morris 1st Dep't Br. at 5;  Gov't 1st Dep't Br. at 4.)  Det. Parker left the building and radioed Det. Smith and the rest of the field team

---

[1]      Because Morris' only habeas claim relates to the trial judge's interrupting and conducting substantial segments of defense counsel's cross examinations, this Court only will briefly summarize the other aspects of the trial, relying on the parties' First Department briefs.

[2]      "The goal of a buy and bust is to send the undercover out into the community, usually locations that are declared drug-prone from the community and their goal is to try to go out and target any specific individual to try to purchase narcotics.  At that time we are trying to apprehend and move in and arrest that individual.  If a buy is made, an arrest is made thereafter."  (Smith: Trial Transcript ["Tr."] 53.)

[3]      Buy money is photocopied to show the serial numbers, so that if a buy is made by an undercover officer and the seller is apprehended, the police can retrieve the money and prove that the undercover did engage in a transaction with that individual.  (Smith: Tr. 55.)

3

that she made a positive buy, describing the address and the people involved.  (Morris 1st Dep't Br. at 5; Gov't 1st Dep't Br. at 5.)

Det. Smith and the field team entered 2295 Grand Concourse and arrested Muniz in the doorway of apartment 1E after he dropped a ziploc baggie of crack cocaine.  (Morris 1st Dep't Br. at 6;  Gov't 1st Dep't Br. at 5.)  Det. Smith saw Morris run through the apartment to the bathroom, where Det. Smith caught him attempting to flush 23 or 24 baggies of cocaine down the toilet.  (Morris 1st Dep't Br. at 6-7;  Gov't 1st Dep't Br. at 5.)[4]  Det. Smith confiscated the cocaine and recovered $202 from Morris' pants pocket, including the $20 of pre-recorded buy money that Det. Parker had used to purchase the drugs.  (Morris 1st Dep't Br. at 7;  Gov't 1st Dep't Br. at 5-6.)  Det. Parker positively identified Morris and Muniz as they were led out of the apartment building.  (Morris 1st Dep't Br. at 7-8.)

## The Court's Questioning of Detectives Smith and Parker

During defense counsel Jose Ortiz's cross examination of Detectives Smith and Parker, Justice Fisch asked the witnesses questions on six occasions.  (Smith: Tr. 116-17, 134-35, 155-57; Parker: Tr. 278-79, 287, 294; see also Morris 1st Dep't Br. at 8-13.)

While cross examining Detective Smith, defense counsel Ortiz questioned how the field team chose the locations where they would attempt to buy drugs.  (Smith: Tr. 115-16.)  Det. Smith answered that the team "put down a general area."  (Smith: Tr. 115.)  Defense counsel asked Det. Smith whether he "put down 10 different places [he was] going to try to buy drugs at on this

---

[4]    Betsie Bruno, an expert chemist for the NYPD, testified that there were 34.2 grains of cocaine in the twenty three baggies.  (Morris 1st Dep't Br. at 8.)

particular day?" (Smith: Tr. 116.) When Det. Smith attempted to answer the question, the following

colloquy ensued:

> A. [DET. SMITH:] Like I just said, it's a general – it's a general guide.
>
> Q. [DEFENSE COUNSEL ORTIZ:] That's not what I asked you.
>
> THE COURT: Let him finish. Mr. Ortiz, let him finish.
>
> MR. ORTIZ: I move to strike the answer.
>
> THE COURT: Let him finish. Why don't you explain what happened? What does one put down -- when the team goes out what locations do you list? Is that the exact locations? Do circumstances permit changes of those locations? Why don't you explain that to the jury so they could understand this.
>
> [DET. SMITH:] Yes, exactly.
>
> MR. ORTIZ: I object. I'm the one doing cross examination.
>
> THE COURT: You object. Your objection is overruled.
>
> A. You put down a guideline, certain areas that you just put down that you know drugs are being sold there, but it's not set in stone because as you're out there, whether the undercover encounters somebody else that takes him to a different location, you don't know that until the time when you're out in the field. So you put down just as a basis, a guideline more or less, general areas. It doesn't mean because there is 10 locations that we are going to definitely only go to those spots. It's just a guideline.

(Smith: Tr. 116-17.)

When defense counsel Ortiz asked Det. Smith whether he was responsible for the

distribution of equipment used by the field team, the following exchange took place:

> A. [DET. SMITH:] Like I just tried to explain, everybody here is pretty responsible in their own manner. When equipment is given, you take equipment you need. Everybody knows. It is a team. Everybody has a certain role. They take the equipment they need.

> Q.    Who safeguards the checking out of this equipment? Don't they have to write something somewhere like Detective X took out a kel?
>
>        They just take whatever they want and nobody knows what anybody has in the field, is that what you are saying to us?
>
> [A.D.A.] SUSTREAN:  Objection.
>
> THE COURT:  Detective, who distributed the equipment?
>
> [DET. SMITH]:  I don't remember, specifically, your Honor, who.
>
> THE COURT:  Who has the responsibility? Is there a supervisor distributing the equipment?
>
> [DET. SMITH]:  When that tact plan gets filled out it goes to the equipment room and they in turn give a certain amount of equipment to our team.  Every member then takes what they are required to use that day to fulfill their function for that day.
>
> THE COURT:  Is it each of the officers responsibility to check whatever equipment he gets to make sure it is working?
>
> [DET. SMITH]:  Right, exactly.

(Smith: Tr. 134-35.)

Finally, when defense counsel questioned Det. Smith about the appearance of the courtyard of 2295 Grand Concourse and the location of apartment 1E, Justice Fisch asked several questions:

> Q. [DEFENSE COUNSEL ORTIZ:]  Isn't it true, Detective, that the door that goes to EF is approximately 50 feet, and then to your right from the entrance to that courtyard, isn't that true?
>
> A.    All I can tell you is that when you come through this little tunnel, take a couple of feet, then the entrance door to the building EF is right there.
>
> Q.    Is that what you're – is that your last word on this?

A.      Yes.

Q.      You're saying to us that as soon as you went in and entered through that gate, that's the door you went in, is that what you're saying to us, right?

A.      That's not what I'm saying.

Q.      What are you saying to us then?  Tell us again?

A.      You walk through the tunnel, there's a little tunnel.  When you come out into the courtyard you walk a couple of paces, right there is an entrance door, it says EF above it.

Q.      A couple of paces.  Are we talking about the same building?

A.      I'm talking about 2295 Grand Concourse.

Q.      Okay.  And you say you remember that, right?

A.      Yes.

Q.      And there's a tunnel, you say there's a tunnel there, too – you did a lot of buy and busts, are you sure you have the same case here?

A.      Yes.

Q.      Perhaps you should have gone there before you took the stand –

[A.D.A.] SUSTREAN:  Objection.

THE COURT:  Sustained.

        Detective, just so that – for the benefit of the jury, is there a gate that you have to go through from the street before getting into the courtyard?

[DET. SMITH]:  Yes, your honor.  There's a wrought iron gate.  Then you walk through what appears to be like a tunnel, you know, it's an oval shape thing, it's a couple of paces.  Then you can go either, to the left there's an entrance to the building there, or you can go right to the entrance of the building.  I'm talking specifically about this entrance doorway right here that has EF over it.

THE COURT:  That's to the right.  In other words, there are two wings to the building; one on the left and one on the right?

[DET. SMITH]:  Correct.  If you walk through the courtyard you can go either left or right.  I'm talking about the right side.

THE COURT:  The one on the right.  Okay.  Now, Mr. Ortiz is talking about a door on the right.  Do you understand what he's saying?

[DET. SMITH]:  No.  Maybe we're talking about two different doors, I'm not sure.

MR. ORTIZ:  All right.

(Smith: Tr. 155-57.)

During the cross examination of Detective Parker, defense counsel questioned when, precisely, Morris "interfered" with the drug sale, and Justice Fisch asked questions during the exchange:

Q.  [DEFENSE COUNSEL ORTIZ:]  Are you saying that when Muniz came back with the drugs for you that's when Raheem Morris interfered?

A.  [DET. PARKER:]  No.

Q.      Is that what you're saying?

A.      That's not what I'm saying.

THE COURT:  That's not what she testified to.

Explain this again without any interruption by anyone.  You handed the $20 to Muniz?

[DET. PARKER]:  Yes.

THE COURT:  Take it from there slowly, okay.
[DET. PARKER]:  As Mr. Muniz started to walk to the back, I noticed Raheem Morris staring at me.  By the time I would say that Muniz reached what ever room he was going to Raheem Morris walked over to me, and said, "I don't know you.  Yo,

Jose you know her?"  Jose yelled from the back from where ever he was  at, "yeah."
While still staring at me still, two to three feet away from me, Raheem Morris said
"do her, and hurry up and get the fuck out."

THE COURT:  Then what happened?

[DET. PARKER]:  Then Jose Muniz came from the back maybe a few second after
that and he handed me two clear bags of crack.  I placed them in my bra, and I side
stepped to the front door of the apartment.

(Parker: Tr. 278-79.)

When defense counsel cross examined Det. Parker regarding the code names she used

to describe suspects, Justice Fisch asked multiple questions:

Q.  [DEFENSE COUNSEL ORTIZ:]  That's JD name Aqua.  Why couldn't you give
him JD 33 or JD name basketball shirt?

THE COURT: Sustained.  She said she would assign a JD depending upon a number
of things.  One is the clothing.  It could be something that's distinctive.  Something
that enables her to recognize a person.

Q.       JD name fat –

THE COURT:  Excuse me; is that correct, Detective?

[DET. PARKER]:  Yes.

THE COURT:  Are there times when you use clothing?

[DET. PARKER]:  Yes.

THE COURT:  Are there times when you use an article of jewelry that somebody is
wearing?

[DET. PARKER]:  Yes.

THE COURT:  Hairstyle?

[DET. PARKER]:  Yes.

THE COURT:  A name?

[DET. PARKER]:  Yes.

THE COURT:  Okay.  Next question.

(Parker: Tr. 287.)

Finally, at the conclusion of the prosecution's redirect examination, Justice Fisch asked her a few questions about drug purchasing:

THE COURT:  Just one or two quick questions.  Have you in your experience ever attempted to buy drugs while you were wearing a uniform?

[DET. PARKER]:  No.

THE COURT:  Or wearing a badge?

[DET. PARKER]:  No.

THE COURT:  Why not?

[DET. PARKER]:  No one would sell to me.

THE COURT:  Do you [think] they will [if] you tell them that you are a cop?

[DET. PARKER]:  No.

THE COURT:  Thank you.  You are excused.

(Parker: Tr. 294.)

After the conclusion of Det. Parker's testimony, outside of the jurors' presence, Justice Fisch explained his participation in the examination of witnesses:

THE COURT:  I want to put something on the record.  In the case of People v. Yut, Y-u-t, next word W-y-a-i, next word Tom, T-o-m, Court of Appeals case, 1981, 53 N.Y.2d 44, 56.  The Court said the following:

The trial judge has the responsibility for safeguarding both the rights of the accused and the interest of the public in the administration of justice. The adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his or her initiative at all appropriate times, and in an appropriate matter, matters which may significantly promote a just determination of the trial.

That language was adopted by the American Bar Association and its standards for the special function of the trial judge.  The following cases I am also putting on the record with regard to the responsibilities of trial judge:  People v. Jami[]son, 47 N.Y.2d 882, 1979 case; People v. DeJesus, D-e-J-e-s-u-s, 42 N.Y.2d 419; People v. Moulton, M-o-u-l-t-o-n, 43 N.Y.2d 944.

And in a First Department case reported in the Law Journal on October 15, 2001, People v. G. Reeves, R-e-e-v-e-s.  First department case the Court had the following to say:  Defendant was not deprived of a fair trial when, during voir dire, the Court presented a brief objectives justification of buy and bust operations in general in response to a prospective juror's concern that such operations were dishonest.

The Court's remarks aided in the selection of a fair jury and did not exhibit any bias in favor of the prosecution or preview any of the evidence against the defendant.

(Tr. 295-96.)

**The Defense Case at Trial**

Raheem Morris testified that he never went into apartment 1E of 2295 Grand Concourse, had no drugs on him during that day, did not attempt to flush drugs down the toilet, and that the only money he had on him was $182, but no pre-recorded buy money.  (Dkt. No. 4: Park Aff. Ex. 1: Morris 1st Dep't Br. at 13; see also Park Aff. Ex. 2: Gov't 1st Dep't Br. at 6.)

In summation, defense counsel argued that the detectives fabricated their testimony and framed Morris, who had nothing to do with the drug sale.  (Morris 1st Dep't Br. at 14.)

**Verdict and Sentencing**

The jury found Morris guilty of one count of third degree criminal sale of a controlled substance and one count of third degree criminal possession of a controlled substance. (Verdict: Tr. 411-13.)

On November 6, 2002, Morris was sentenced as a predicate felon to concurrent terms of six to twelve years of imprisonment. (Dkt. No. 4: Park Aff. Ex. 1: Morris 1st Dep't Br. at 14; Park Aff. Ex. 2: Gov't 1st Dep't Br. at 1.)

**Morris' Direct Appeal**

Represented by new counsel, the Center for Appellate Litigation, Morris' direct appeal to the First Department raised the single claim that "by interrupting and conducting substantial segments of defense counsel's cross-examination of the arresting officer and undercover in an effort to make their stories coherent and credible, the court denied [Morris] his due process right to a fair trial." (Dkt. No. 4: Park Aff. Ex. 1: Morris 1st Dep't Br. at 15; id. at 15-27.)

On February 10, 2005, the First Department affirmed Morris' conviction, holding in full:

> Defendant's claim that he was denied a fair trial because of the court's questioning of witnesses is unpreserved, and we decline to review it in the interest of justice. Were we to review this claim, we would find that the court engaged in limited questioning for clarification purposes, that it did not take on "either the function or appearance of an advocate" and that its participation did not convey to the jury any opinion on the merits or deprive defendant of a fair trial.

People v. Morris, 15 A.D.3d 241, 241, 788 N.Y.S.2d 853, 853 (1st Dep't 2005) (citations omitted).

On March 31, 2005, the New York Court of Appeals denied leave to appeal.  People

v. Morris, 4 N.Y.3d 833, 796 N.Y.S.2d 588 (2005).

**Morris' Federal Habeas Corpus Petition**

Morris' pro se habeas corpus petition raises the single claim that "by interrupting and

conducting substantial segments of defense counsel's cross examination of the arresting officer and

undercover in an effort to make their stories coherent and credible the court denied [Morris] his due

process right to fair trial."  (Dkt. No. 1: Pet. ¶ 13.)

## ANALYSIS

## I.    THE AEDPA REVIEW STANDARD[5/]

---

[5/]    For additional decisions by this Judge discussing the AEDPA review standard in language
substantially similar to that in this entire section of this Report & Recommendation, see, e.g.,
Harrison v. Walsh, 06 Civ. 13328, 2007 WL 1576265 at *12-15 (S.D.N.Y. June 1, 2007)
(Peck, M.J.); Brown v. Greene, 06 Civ. 4824, 2007 WL 1379873 at *8-11 (S.D.N.Y.  May
11, 2007) (Peck, M.J.); Cassie v. Graham, 06 Civ. 5536, 2007 WL 506754 at *12-15
(S.D.N.Y. Jan. 31, 2007) (Peck, M.J.); Morales v. Artus, 05 Civ. 3542, 2006 WL 3821488
at *13-16 (S.D.N.Y. Dec. 28, 2006) (Peck, M.J.) (citing my prior decisions); Bryant v.
Fischer, 05 Civ. 0437, 2005 WL 3418282 at *10-14 (S.D.N.Y. Dec. 14, 2005) (Peck, M.J.);
Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *5-8 (S.D.N.Y. Dec. 6, 2005) (Peck,
M.J.) (citing my prior decisions), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y.
June 12, 2006) & 2006 WL 2689889 (S.D.N.Y. Sept. 19, 2006); Boyd v. Smith, 03 Civ.
5401, 2004 WL 2915243 at *5-7 (S.D.N.Y. Dec. 17, 2004) (Peck, M.J.) (citing my prior
decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *12-14 (S.D.N.Y.
Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); Larrea v. Bennett, 01 Civ. 5813,
2002 WL 1173564 at *14 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002
WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Mendez v. Artuz,
98 Civ. 2652, 2000 WL 722613 at *22 (S.D.N.Y. June 6, 2000) (Peck, M.J.), report & rec.
adopted, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000), aff'd, 303 F.3d 411, 417 (2d Cir.
2002), cert. denied, 537 U.S. 1245, 123 S. Ct. 1353 (2003); Fluellen v. Walker, 97 Civ. 3189,
2000 WL 684275 at *10 (S.D.N.Y. May 25, 2000) (Peck, M.J.), aff'd, 41 Fed. Appx. 497 (2d
Cir. 2002), cert. denied, 538 U.S. 978, 123 S. Ct. 1787 (2003).

13

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000). The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[6]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[7]  Both,

---

[6]    See also, e.g., Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[7]    Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. (continued...)

however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[8/]  "That federal law, as defined by the Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d at 42.  "A petitioner cannot win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d at 110; accord, e.g., DelValle v. Armstrong, 306 F.3d at 1200.

As to the "contrary to" clause:

A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court

---

[7/]     (...continued)
Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[8/]     Accord, e.g., Carey v. Musladin, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from the Court regarding this [issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); Yarborough v. Alvarado, 541 U.S. 652, 659, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Yung v. Walker, 341 F.3d 104, 109-110 (2d Cir. 2003); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

<u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[9/]

In <u>Williams</u>, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 413, 120 S. Ct. at 1523.[10/] However, "[t]he term 'unreasonable' is . . . difficult to define." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 410, 120 S. Ct. at 1522. The Supreme Court made clear that "an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law." <u>Id</u>.[11/] Rather, the issue is "whether the state court's

---

[9/]    Accord, <u>e.g.</u>, <u>Brown</u> v. <u>Payton</u>, 544 U.S. 133, 125 S. Ct. 1432, 1438-39 (2005); <u>Bell</u> v. <u>Cone</u>, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); <u>Price</u> v. <u>Vincent</u>, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 123 S. Ct. at 1173-74; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d 238, 242 (2d Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 1267 (2007); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d 210, 219 (2d Cir.), <u>cert. denied</u>, 126 S. Ct. 215 (2005); <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 42; <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d at 127-28.

[10/]   Accord, <u>e.g.</u>, <u>Brown</u> v. <u>Payton</u>, 544 U.S. at 141, 125 S. Ct. at 1439; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2534-35; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d 238, 246 (2d Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 1383 (2007); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181.

[11/]   See also, <u>e.g.</u>, <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained:  '[A] federal habeas court may not issue the writ simply because that court concludes that the state-court decision applied [a Supreme Court case] incorrectly.'") (quoting <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175; <u>Hawkins</u> v. <u>Costello</u>, 460
(continued...)

application of clearly established federal law was objectively unreasonable."  Williams v. Taylor,

529 U.S. at 409, 120 S. Ct. at 1521.[12]  "Objectively unreasonable" is different from "clear error."

Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness.").  However,

the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is

required . . . the increment need not be great; otherwise, habeas relief would be limited to state court

decisions so far off the mark as to suggest judicial incompetence.'"  Jones v. Stinson, 229 F.3d at 119

(quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).[13]  "[T]he range of reasonable

---

[11]   (...continued)
F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 124-25; DelValle v. Armstrong, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

[12]   Accord, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v. Smith, 539 U.S. at 520-21, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti, 537 U.S. at 25-27, 123 S. Ct. at 360-61; Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006); Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002); Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 128-29.

[13]   Accord, e.g., Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

judgment can depend in part on the nature of the relevant rule." <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 663, 124 S. Ct. at 2149.[14]

   Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 45.[15]

   Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>accord</u>, <u>e.g.</u>, <u>Bell</u> v. <u>Cone</u>, 543 U.S. at 455, 125 S. Ct. at 853; <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d at 519.

---

[14]  The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

<u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 663, 124 S. Ct. at 2149; <u>accord</u>, <u>e.g.</u>, <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243.

[15]  <u>Accord</u>, <u>e.g.</u>, <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>see</u> <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision. There is force to this argument. Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. At the same time, the difference between applying a rule and extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment.  When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Mosby v. Senkowski, 470 F.3d at 519; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 220; Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a 'determination on the merits' and as such requires the deference specified by § 2254."  Moreover, "[I]f any reasonable ground was available [for the state court's decision], we must assume that the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004);

Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise

Appellate Division disposition – the word 'denied' – triggered AEDPA deference.").

Where the state court decision is not clear as to whether it rests on federal law or state

procedural law, the Second Circuit in Jimenez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006), cert.

denied, 127 S. Ct. 976 (2007), instructed that the court must "examine the three clues laid out in

Coleman, Quirama and Sellan" – that is, "(1) the face of the state-court opinion, (2) whether the state

court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances."

Jimenez v. Walker, 458 F.3d at 145 & n.16.  Using these three factors, the court should

classify the decision as either:

> (1)   fairly appearing to rest primarily on federal law or to be interwoven
>         with federal law or
>
> (2)   fairly appearing to rest primarily on state procedural law.

Absent a clear and express statement of reliance on a state procedural bar, the Harris
presumption applies to decisions in the first category and deems them to rest on the
merits of the federal claim.  Such decisions are not procedurally barred and must be
afforded AEDPA deference as adjudications "on the merits" under 28 U.S.C.
§ 2254(d).  The Harris presumption does not apply to decisions in the second
category, which show themselves to rest on an independent state procedural bar.  Nor
does it apply to decisions in the first category which contain a clear statement of
reliance on a state procedural bar.  No AEDPA deference is due to these decisions,
but the state may successfully assert that habeas relief is foreclosed provided that the
independent state procedural bar is adequate to support the judgment and that neither
cause and prejudice nor a fundamental miscarriage of justice is shown.

The effect of these rules is to present federal habeas courts with a binary
circumstance: we either apply AEDPA deference to review a state court's disposition
of a federal claim or refuse to review the claim because of a procedural bar properly
raised.  The middle ground . . . does not exist.

Jimenez v. Walker, 458 F.3d at 145-46 (citations & fns. omitted); accord, e.g., Hawkins v. Costello, 460 F.3d at 242 ("In Jimenez v. Walker, we recently made clear that when a state court rejects a petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the adjudication rested on the merits.").  Of course, "[i]f there is no [state court] adjudication on the merits [and no procedural bar], then the pre-AEDPA, de novo standard of review applies." Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); see also Jimenez v. Walker, 458 F.3d at 145 n.17.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations:  "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220.  "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47.

## II.   MORRIS' CLAIM OF JUDICIAL MISCONDUCT IS BARRED BY ADEQUATE AND INDEPENDENT STATE LAW GROUNDS[16]

      Morris' habeas claim asserts that "by interrupting and conducting substantial segments of defense counsel's cross examination of the arresting officer and undercover in an effort to make their stories coherent and credible the court denied [Morris] his due process right to fair trial." (Dkt. No. 1: Pet. ¶ 13.)  The First Department held:

> Defendant's claim that he was denied a fair trial because of the court's questioning of witnesses is unpreserved, and we decline to review it in the interest of justice.  Were we to review this claim, we would find that the court engaged in limited questioning for clarification purposes, that it did not take on 'either the function or appearance of an advocate' and that its participation did not convey to the jury any opinion on the merits or deprive defendant of a fair trial.

---

[16]    For additional decisions by this Judge discussing the adequate and independent state ground doctrine in language substantially similar to that in this entire section of this Report and Recommendation, see, e.g., Harrison v. Walsh, 06 Civ. 13328, 2007 WL 1576265 at *15-18 (S.D.N.Y June 1, 2007) (Peck, M.J.); Murray v. Greene, 06 Civ. 3677, 2006 WL 3751294 at *13-17 (S.D.N.Y. Dec. 21, 2006) (Peck, M.J.); McLean v. Conway, 06 Civ. 0807, 2006 WL 2405067 at *16 (S.D.N.Y. Aug. 21, 2006) (Peck, M.J.); Hardison v. Artus, 06 Civ. 0322, 2006 WL 1330064 at *9 (S.D.N.Y. May 16, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1763678 (S.D.N.Y. June 23, 2006); Harris v. Woods, 05 Civ. 5582, 2006 WL 1140888 at *34 (S.D.N.Y. May 1, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1975990 (S.D.N.Y. July 10, 2006); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *8 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *17-18 (S.D.N.Y. Nov. 8, 2004) (Peck, M.J.) (citing my prior decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *18-21 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); Rosario v. Bennett, 01 Civ. 7142, 2002 WL 31852827 at *18- 21 (S.D.N.Y. Dec. 20, 2002) (Peck, M.J.) (citing my prior decisions); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *8-9 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Mercado v. Portuondo, 99 Civ. 11234, 2000 WL 1663437 at *12 (S.D.N.Y. Nov. 3, 2000) (Peck, M.J.), report & rec. adopted, 2001 WL 987926 (S.D.N.Y. Aug. 29, 2001), aff'd, No. 01-2701, 77 Fed. Appx. 546, 2003 WL 22134571 (2d Cir. Sept. 15, 2003); Owens v. Portuondo, 98 Civ. 6559, 1999 WL 378343 at *5 (S.D.N.Y. June 9, 1999) (Peck, M.J.), aff'd, No. 99-2416, 205 F.3d 1324, 2000 WL 246226 (2d Cir. Feb.  22, 2000).

People v. Morris, 15 A.D.3d 241, 241, 788 N.Y.S.2d 853, 853 (1st Dep't 2005) (citations omitted).

## A.   Adequate and Independent State Ground Doctrine

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice."  Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations & internal quotations omitted).[17]

"[I]n order to preclude federal review [under the adequate and independent doctrine], the last state court to render judgment must 'clearly and expressly state [ ] that its judgment rest[ed] on a state procedural bar.'"  Jones v. Vacco, 126 F.3d at 415 (quoting Glenn v. Bartlett, 98 F.3d at 724).  The Second Circuit has made clear that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."  Velasquez v. Leonardo, 898 F.2d at 9; accord, e.g., Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to

---

[17]     See also, e.g., Schlup v. Delo, 513 U.S. 298, 314-16, 115 S. Ct. 851, 860-61 (1995); Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); Murray v. Carrier, 477 U.S. 478, 485-88, 496, 106 S. Ct. 2639, 2644-45, 2649-50 (1986); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir. 1999); Reyes v. Keane, 118 F.3d 136, 138-40 (2d Cir. 1997); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").[18]   Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails reconsideration of the federal issue on federal habeas."  Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10.

### B.   Morris' Claims Are Procedurally Barred

Morris raised on direct appeal the same claim of judicial misconduct that he now raises on his habeas petition.  (See page 11 above.)  The First Department held that Morris' "claim that he was denied a fair trial because of the court's questioning of witnesses is unpreserved, and we decline to review it in the interest of justice.  Were we to review this claim, we would find that the court . . . did not convey to the jury any opinion on the merits or deprive defendant of a fair trial ."  People v. Morris, 15 A.D.3d 241, 241, 788 N.Y.S.2d 853, 853 (1st Dep't 2005) (citations omitted, quoted in full on pages 11 and 21 above).

State courts are not required to use any particular language:

> We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, but we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim – every state appeal, every denial of state collateral review – in order that federal courts might not be bothered with reviewing state law and the record in the case.

Coleman v. Thompson, 501 U.S. 722, 739, 111 S. Ct. 2546, 2559 (1991).

---

[18]   See, e.g., Garcia v. Lewis, 188 F.3d at 77-82; Glenn v. Bartlett, 98 F.3d at 724-25; see also, e.g., Santiago v. People, 97 Civ. 5076, 1998 WL 803414 at *4 (S.D.N.Y. Oct. 13, 1998) ("When the state court rejects a claim both on the merits and because it was waived under the state's procedural law, review of the claim on a federal habeas corpus petition is barred.").

Furthermore, unlike the situation where the state court holds that claims were either unpreserved <u>or</u> without merit, which the Second Circuit has found is usually too ambiguous to preclude habeas review,[19]/ here the First Department explicitly stated that it found Morris' claim "unpreserved," <u>People</u> v. <u>Morris</u>, 15 A.D.3d at 241, 788 N.Y.S.2d at 853-54, and the fact that the First Department also stated the conclusion it would reach on the merits "[w]ere we to review this claim," <u>People</u> v. <u>Morris</u>, 15 A.D.3d at 241, 788 N.Y.S.2d at 854, does not change the result.  <u>See</u>, <u>e.g.</u>, <u>Fama</u> v. <u>Comm'r of Corr. Servs.</u>, 235 F.3d 804, 810-11 & n.4 (2d Cir. 2000) ("where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved"); <u>Glenn</u> v. <u>Bartlett</u>, 98 F.3d 721, 724-25 & n.3 (2d Cir. 1996) (state decision which denied prosecutorial misconduct claim as not preserved for appellate review represented an independent and adequate state procedural ground even though court addressed merits of claim "in the interests of justice"), <u>cert. denied</u>, 520 U.S. 1108, 117 S. Ct. 1116 (1997); <u>Velasquez</u> v. <u>Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990) (state decision which denied claims as procedurally barred but then alternatively addressed merits rested on adequate and independent state grounds); <u>Murray</u> v. <u>Greene</u>, 06 Civ. 3677, 2006 WL 3751294 at *15 n.30 (S.D.N.Y. Dec. 21, 2006) (Peck, M.J.) (&

---

[19]/     <u>See</u>, <u>e.g.</u>, <u>Galarza</u> v. <u>Keane</u>, 252 F.3d 630, 637 (2d Cir. 2001) ("We have found a state court's reliance on a state procedural bar to be ambiguous, and thus refused to invoke a procedural bar, where . . . the state court rejected defendant's claims on appeal as 'either meritless or unpreserved.'"); <u>Tankleff</u> v. <u>Senkowski</u>, 135 F.3d 235, 247 (2d Cir. 1998); <u>Reid</u> v. <u>Senkowski</u>, 961 F.2d 374, 377 (2d Cir. 1992).

cases cited therein).  Thus, the First Department's decision here unambiguously rested on a state procedural ground.[20]

Under New York law, "[a]s a general rule points which were not raised at trial may not be considered for the first time on appeal."  People v. Thomas, 50 N.Y.2d 467, 471, 429 N.Y.S.2d 584 (1980) (citing C.P.L. § 470.05(2)).[21]  In order to preserve his judicial misconduct claim, Morris was required to object at the time the questioning occurred.  People v. Charleston, 56 N.Y.2d 886, 887, 453 N.Y.S.2d 399, 400 (1982) ("A question of law for review in this court is presented on a claim of excessive interference by the Trial Judge when there has been an objection

---

[20]   The New York Court of Appeals denied Morris' application for leave to appeal.  People v. Morris, 4 N.Y.3d 833, 796 N.Y.S.2d 588 (2005).  The Supreme Court held in Ylst v. Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590 (1991), with respect to unexplained orders, that federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Id. at 803, 111 S. Ct. at 2594. Petitioner has presented no facts to rebut that presumption here.

[21]   C.P.L. § 470.05(2) provides, in relevant part:

> For the purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.  Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal.  In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

at trial in some form sufficient to give the judge an opportunity to correct the problem . . .");[22] People

v. Darling, 276 A.D.2d 922, 924, 714 N.Y.S.2d 393, 396 (3d Dep't 2000) ("[D]efense counsel never

moved for recusal . . . or voiced any objection to [the court's] conduct at trial.  Thus, defendant's

present claims of judicial bias and prejudice are . . . unpreserved for review . . ."), appeal denied, 96

N.Y.2d 733, 722 N.Y.S.2d 800 (2001); People v. Smith, 251 A.D.2d 226, 227, 674 N.Y.S.2d 682,

683 (1st Dep't) ("Having failed to object to the individual instances of questioning by the court, or

any pattern of questioning, this claim is unpreserved for appellate review . . ."), appeal denied, 92

N.Y.2d 930, 680 N.Y.S.2d 472 (1998); People v. Graziano, 151 A.D.2d 775, 775, 543 N.Y.S.2d 107,

108 (2d Dep't) ("In order to preserve a claim that a trial court improperly participated in the

questioning of witnesses and helped develop the prosecutor's case, [defense] counsel must object to

the court's interference."), appeal denied, 74 N.Y.2d 809, 546 N.Y.S.2d 567 (1989); People v.

Casasnovas, 108 A.D.2d 923, 924, 485 N.Y.S.2d 813, 814 (2d Dep't 1985) ("The court's

participation in the questioning of the witnesses was not objected to, and therefore the issue has not

been preserved."); see, e.g., Garcia v. Warden, Dannemora Corr. Facility, 795 F.2d 5, 7 (2d Cir.

1986) ("[A]s a general rule, New York appellate courts will not even consider claims of excessive

interference by a trial judge unless timely objections were addressed to the judge's course of conduct

---

[22]    "'Because a court is entitled to question witnesses to clarify testimony and to facilitate the
progress of the trial, a defense attorney cannot be expected to enter an objection to the Trial
Judge's conduct at the first sign of judicial overbearance.'  Nonetheless, after it becomes
'clear that the Judge intends to exceed his permissible role and assume the advocate's
function' . . . it is incumbent upon defense counsel at least to attempt to register some protest
to that conduct to preserve the matter for appellate review." People v. Charleston, 56 N.Y.2d
at 887, 453 N.Y.S.2d at 400 (quoting People v. Yut Wai Tom, 53 N.Y.2d 44, 55, 439
N.Y.S.2d 896, 902 (1981)).

in such a manner as to put him on notice that his conduct was felt to be improper." Where "[d]efense counsel objected to several questions posed by the court, but only on the ground that they were leading or otherwise improper, not because it was the judge who had asked them," counsel was "barred . . . from arguing judicial improprieties for the first time in the Appellate Division." ) (citing People v. Charleston); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *20 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.); Fauntleroy v. Artuz, No. 00 CV 2209, 2003 WL 22670906 at *5 (E.D.N.Y. Oct. 31, 2003) (Petitioner's habeas petition claimed "that the trial court denied him a fair trial when it unduly interfered with direct and cross-examination of certain witnesses in a way that bolstered the government's case and indicated to the jury a bias against" petitioner.  Habeas court determined that the Appellate Division's conclusion that petitioner's claim "was unpreserved for appellate review" rested on an adequate and independent state procedural ground and found the claim procedurally barred.); Martinez v. Greiner, 01 Civ. 2911, 2003 WL 1936191 at *3 (S.D.N.Y. Apr. 23, 2003) (Mukasey, D.J.) ("I agree with Magistrate Judge Peck that the First Department's finding of procedural default" for defense counsel's failure to object to extensive judicial questioning of witnesses, "is an independent and adequate state ground that precludes review by this [habeas] court."), adopting report & rec., 2001 WL 910772 at *10 (S.D.N.Y. Aug. 13, 2001) (Peck, M.J.).

        A party must make a specific protest at the time of a claimed error to preserve an issue for appellate review.  E.g., People v. Hardy, 4 N.Y.3d 192, 197 n.3, 791 N.Y.S.2d 513, 517 n.3 (2005).  Failure to specify the grounds for a claim of error at the time of an objection (either because an objection is general, or because it specifies a different ground than that raised on appeal) renders claims not specified unpreserved for appellate review.  E.g., Olivo v. Thorton, 2005 WL 3292542

at *10 ("Under New York law, a party's failure to specify the grounds for its general objection also renders its argument unpreserved for appellate review.") (citing N.Y. cases); <u>People</u> v. <u>Kello</u>, 96 N.Y.2d 740, 743-44, 723 N.Y.S.2d 111 (2001) (Claim is unpreserved where defendant "never based his trial objection to the 911 tapes on the Confrontation Clause.  Rather, the only issue raised before the trial court was the erroneous admission of the tapes under our State common-law hearsay rule. . . . The defendant's failure to raise a Confrontation Clause objection precluded the trial court and prosecution from considering and, thus, avoiding any constitutional error which . . . differs from the trial evidence error which was preserved."); <u>People</u> v. <u>Tonge</u>, 93 N.Y.2d 838, 839-40, 688 N.Y.S.2d 88, 88 (1999) ("a party's failure to specify the basis for a general objection renders the argument unpreserved for [state appellate] review."); <u>People</u> v. <u>Robinson</u>, 88 N.Y.2d 1001, 1002, 648 N.Y.S.2d 869, 870 (1996) ("to frame and preserve a question of law reviewable by this Court, an objection or exception must be made with sufficient specificity at the trial, when the nisi prius court has an opportunity to consider and deal with the asserted error."); <u>People</u> v. <u>Velasco</u>, 77 N.Y.2d 469, 474, 568 N.Y.S.2d 721, 723 (1991); <u>People</u> v. <u>Dien</u>, 77 N.Y.2d 885, 886, 568 N.Y.S.2d 899, 900 (1991).

Here, Morris' defense counsel objected to only one of the specific questions by the trial judge, stating:  "I object.  I'm the one doing cross examination."  (<u>See</u> page 4 above.)  His one objection is not sufficient to preserve the issue.  <u>See</u>, <u>e.g.</u>, <u>Martinez</u> v. <u>Greiner</u>, 2003 WL 1936191 at *3 ("In the instant case, although defense counsel objected three times to questioning by the Trial Judge, the record indicates that the objections were directed to specific questions rather than to the Judge's general course of action or participation as a whole.  By failing to call the Judge's attention

to his allegedly prejudicial conduct, defendant did not offer him an opportunity to alter or correct it."), adopting report & rec., 2001 WL 910772 at *10 (S.D.N.Y. Aug. 13, 2001) (Peck, M.J.); People v. Galloza, 270 A.D.2d 69, 70, 705 N.Y.S.2d 35, 35 (1st Dep't) ("By failing to object to the court's conduct as a whole or seek any remedy, defendants' contention that the trial court was biased and excessively interfered in the proceedings is not preserved.") (citing People v. Charleston), appeal denied sub nom. People v. Martinez, 95 N.Y.2d 855, 714 N.Y.S.2d 6 (2000); People v. Smith, 251 A.D.2d at 227, 674 N.Y.S.2d at 683 ("Having failed to object to the individual instances of questioning by the court, or any pattern of questioning, this claim is unpreserved for appellate review . . .").

Both the Supreme Court and the Second Circuit have held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground.  See, e.g., Wainwright v. Sykes, 433 U.S. 72, 86, 90, 97 S. Ct. 2497, 2506-08 (1977) (contemporaneous objection rule is an adequate and independent state ground); Murray v. Carrier, 477 U.S. 478, 485-92, 497, 106 S. Ct. 2639, 2644-48, 2650 (1986) (same); Franco v. Walsh, 73 Fed. Appx. 517, 518 (2d Cir. 2003) (finding petitioner's claim of an erroneous jury charge procedurally defaulted because "[n]o contemporaneous objection to the charge was lodged, and the Appellate Division found that the issue was therefore unpreserved."); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) ("we have observed and deferred to New York's consistent application of its contemporaneous objection rules") (citing Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (respecting state court's application of C.P.L. § 470.05(2) as adequate bar to federal habeas review), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995), & Fernandez v. Leonardo, 931

F.2d 214, 216 (2d Cir.) (noting that failure to object at trial constitutes adequate procedural default

under C.P.L. § 470.05(2)), cert. denied, 502 U.S. 883, 112 S. Ct. 236 (1991)); Glenn v. Bartlett, 98

F.3d at 724-25 (failure to object constituted adequate and independent state ground); Velasquez v.

Leonardo, 898 F.2d at 9 (violation of New York's contemporaneous objection rule is an adequate and

independent state ground).[23/]

       Because there is an adequate and independent finding by the First Department that

Morris procedurally defaulted on his constitutional claims concerning the trial judge's questions,

Morris would have to show in his habeas petition "cause for the alleged violation of federal law, or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

Coleman v. Thompson, 501 U.S. at 750, 111 S. Ct. at 2565.[24/]   Morris does not allege cause,

---

[23/]    See also, e.g., Figueroa v. Greiner, 02 Civ. 2126, 2002 WL 31356512 at *11-12 (S.D.N.Y. Oct. 18, 2002) (Peck, M.J.) ("The Second Circuit has held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground."); Cooper v. LeFevre, No. 94 CV 5958, 1998 WL 386340 at *2 (E.D.N.Y. July 8, 1998) ("[T]he Second Department held that [the petitioner's claim was unpreserved because] the Petitioner violated the contemporaneous objection rule by failing to 'raise specific objections to the evidence . . . ' he cited in his appeal as having deprived him of a fair trial. . . . This Court finds that the Second Department's basis for denying Petitioner's claim was both independent of the federal question raised by such claim and adequate to support the judgment.  As a result, this Court is procedurally barred from reviewing the merits of Petitioner's claim"); Jamison v. Smith, 94 Civ. 3747, 1995 WL 468279 at *2 (E.D.N.Y. July 26, 1995) ("Courts in this circuit have consistently held that the failure to object contemporaneously . . . constitutes an adequate and independent basis for barring habeas review.").

[24/]    See also, e.g., Schlup v. Delo, 513 U.S. 298, 324-27, 115 S. Ct. 851, 865-67 (1995) (fundamental miscarriage of justice may be demonstrated by showing through "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence").

prejudice or a fundamental miscarriage of justice.  Thus Morris' claim should be <u>DENIED</u> as procedurally barred from habeas review.

## <u>CONCLUSION</u>

For the reasons set forth above, Morris' habeas petition should be <u>DENIED</u>.

## <u>FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION</u>

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Laura Taylor Swain, 500 Pearl Street, Room 755, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Swain (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86 (1994); <u>Roldan</u> v. <u>Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Frank</u> v. <u>Johnson</u>, 968 F.2d 298, 300 (2d Cir.), <u>cert. denied</u>, 506 U.S. 1038, 113 S. Ct. 825 (1992); <u>Small</u> v. <u>Secretary of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988);

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72, 6(a), 6(e).


DATED:        New York, New York
              June 29, 2007

                                    Respectfully submitted,


                                    _____
                                    Andrew J. Peck
                                    United States Magistrate Judge

Copies to:    Raheem Morris (Regular & Certified Mail)
              Na Na Park, Esq.
              Judge Laura Taylor Swain

H:\OPIN\RAHEEMMORRIS